224 P.3d 852 (2010)
STATE of Washington, Appellant,
v.
James Joseph BAILEY, Respondent.
No. 28010-1-III.
Court of Appeals of Washington, Division 3.
February 2, 2010.
*854 Kevin Gregory Eilmes, Prosecuting Attorney's Office, Yakima, WA, for Appellant.
David L. Donnan, Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Respondent.
¶ SWEENEY, J.
¶ 1 A police officer may not seize or even stop a citizen without probable cause to believe a crime has been committed or at least without some reasonable suspicion of criminal activity. Here, an officer asked the defendant if he had a minute and further asked the defendant what he was doing. The trial court concluded that the defendant was seized and suppressed drug evidence recovered by the officer. We conclude that the encounter amounted to a "social contact" and that the defendant was not seized. And we reverse the order to suppress and remand the case for further proceedings.

FACTS
¶ 2 Yakima Police Officer James Walker saw James Bailey walking along an otherwise deserted street in Yakima, Washington. He asked Mr. Bailey "if he had a minute." Report of Proceedings (RP) at 5. The officer had to repeat his question for Mr. Bailey to hear him. Mr. Bailey responded affirmatively and walked toward the officer. The officer questioned Mr. Bailey to determine "if he had business in there or if he was legitimately headed somewhere." RP at 6. He asked Mr. Bailey where he was going and what he was up to. Mr. Bailey explained that he was on his way to a friend's house. Officer Walker then asked him for his identification. Mr. Bailey gave the officer his identification and, as soon as he did, advised the officer that he likely had an outstanding warrant. Officer Walker verified that Mr. Bailey had an outstanding warrant and arrested him. The officer searched Mr. Bailey incident to arrest and found two and one-half grams of methamphetamine in his glove.
¶ 3 The State charged Mr. Bailey with one count of possession of a controlled substancemethamphetamine. Mr. Bailey moved to suppress the evidence on the grounds that the stop was pretextual and the officer's arrest of Mr. Bailey was an unconstitutional seizure. The trial court held a hearing and concluded that Mr. Bailey was not free to walk away. So the court suppressed the drug evidence and dismissed the charge against Mr. Bailey. The State appeals the ruling.

DISCUSSION
¶ 4 The State contends that this was a classic social contact in a public place by a police officer, that it was neither a seizure nor an investigative detention, and that the trial court therefore erred by suppressing the drug evidence and dismissing the prosecution. Mr. Bailey responds that under the circumstances here he was not free to simply walk away and there were no legally cognizable grounds to stop him.
¶ 5 We review de novo a trial court's conclusions of law following a suppression hearing. State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997). Whether police have seized a person is a mixed question of law and fact. Id. What the police said and did and what the defendant said and did are questions of fact. State v. Montague, 73 Wash.2d 381, 389, 438 P.2d 571 (1968). What legal consequences flow from those facts is a question of law. State v. Lee, 147 Wash.App. 912, 916, 199 P.3d 445 (2008), review denied, *855 166 Wash.2d 1016, 210 P.3d 1019 (2009). And whether a warrantless seizure or a Terry[1] stop passes constitutional muster is a question of law that we review de novo. State v. Rankin, 151 Wash.2d 689, 694, 92 P.3d 202 (2004).

UNCONSTITUTIONAL SEIZURE
¶ 6 The Fourth Amendment to the United States Constitution protects individuals against unwarranted searches and seizures. Article I, section 7, of the Washington Constitution provides greater protection to individuals than the Fourth Amendment. Id. A seizure occurs when "an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." Id. at 695, 92 P.3d 202. This is an objective standard. Id. By contrast, "an encounter between a citizen and the police is consensual if a reasonable person under the circumstances would feel free to walk away." State v. Harrington, 167 Wash.2d 656, 661-62, 222 P.3d 92, 94 (2009) (en banc) (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). If a contact constitutes a seizure, that seizure must be based on "specific and articulable" objective facts that give rise to a reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
¶ 7 "[A] police officer who, as part of his community caretaking function, approaches a citizen and asks questions limited to eliciting that information necessary to perform that function has not `seized' the citizen." State v. Gleason, 70 Wash.App. 13, 16, 851 P.2d 731 (1993). And an officer may ask for an individual's identification in the course of a casual conversation. State v. Young, 135 Wash.2d 498, 511, 957 P.2d 681 (1998); Armenta, 134 Wash.2d at 11, 948 P.2d 1280; State v. Afana, 147 Wash.App. 843, 846, 196 P.3d 770 (2008), review granted, 166 Wash.2d 1001, 208 P.3d 1123 (2009). Again, the key inquiry is whether the officer either uses force or displays authority in a way that would cause a reasonable person to feel compelled to continue the contact. Rankin, 151 Wash.2d at 695, 92 P.3d 202.
¶ 8 The Washington Supreme Court recently clarified the limitations of a "social contact" in Harrington, 167 Wash.2d 656, 222 P.3d 92. There, the court held that, viewed cumulatively, a series of police actions that constitute a progressive intrusion into a person's private affairs are an unlawful seizure, even where the actions may separately pass constitutional muster. Harrington, 167 Wash.2d at 669-70, 222 P.3d at 98-99. Although there are similarities between the facts of this case and those in Harrington, the degree of intrusion by the officer is less here.
¶ 9 In Harrington, the police intrusion progressed as follows: (1) police officer, whose patrol car was not in sight, approached Mr. Harrington on foot and initiated conversation; (2) officer asked Mr. Harrington whether he had a minute to talk, and then where he was coming from; (3) officer asked Mr. Harrington, who was putting his hands into his bulging pockets, to remove his hands from his pockets; (4) second officer arrived and stood several feet from Mr. Harrington and the first officer; (5) first officer asked Mr. Harrington for permission to pat him down for officer safety, and Mr. Harrington consented; and (6) officer felt a methamphetamine pipe in Mr. Harrington's pocket, arrested him, and found the pipe and a bag of methamphetamine in a search incident to arrest. Harrington, 167 Wash.2d at 660-62, 222 P.3d at 93-94. Here, no second officer joined Officer Walker, and his intrusions into Mr. Bailey's privacy progressed only as far as the second stage of Harrington, plus the additional intrusion of asking for Mr. Bailey's identification. And, significantly, Mr. Bailey volunteered that he may have had an outstanding warrant as soon as he handed Officer Walker his identification. RP at 6. At that point, the officer had the reasonable suspicion necessary to seize Mr. Bailey. See Terry, 392 U.S. at 21, 88 S.Ct. 1868 (an officer may briefly detain a person if the officer's suspicion is reasonable, *856 meaning the suspicion is based on specific, articulable facts).
¶ 10 Mr. Bailey argues that his case is analogous to Gleason, 70 Wash.App. at 17, 851 P.2d 731. There, we found a seizure where two officers approached a person leaving an apartment complex known for drug activity. One of the officers approached Mr. Gleason from behind and called out, "`[C]an I talk to you a minute?'" Id. (alteration in original). The tone of the officer's requests in Gleason differentiated those requests or demands from the apparent tone of Officer Walker's requests. Compare id. (officer called out from behind person) with RP at 9 (officer asked Mr. Bailey whether he wanted to talk to the officer, and Mr. Bailey walked toward him). In addition, in Gleason as in Harrington, two officers were present, creating more of an environment of investigation. Gleason, 70 Wash.App. at 17, 851 P.2d 731; Harrington, 167 Wash.2d at 665, 222 P.3d at 96; Young, 135 Wash.2d at 512, 957 P.2d 681 (the "`threatening presence of several officers'" is likely to result in a seizure (quoting Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870)).
¶ 11 Mr. Bailey also relies on State v. Crane to support his position that Officer Walker's actions amounted to a seizure. State v. Crane, 105 Wash.App. 301, 19 P.3d 1100 (2001), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003). In Crane, a police officer stopped Mr. Crane and two companions as they approached Mr. Crane's brother's house. Id. at 304, 19 P.3d 1100. He asked a series of questions very similar to the questions Officer Walker asked here. Id. at 311-13, 19 P.3d 1100. However, Division Two of this court found that a seizure occurreda reasonable person would not have felt free to leavewhen the officer was holding the identification and running a records check. Id. Here, Mr. Bailey volunteered that he had an outstanding warrant before Officer Walker ran a records check.
¶ 12 Officer Walker's first questions did not amount to a seizure. And, in light of relevant case law, none of Officer Walker's subsequent questions transformed the situation into one in which Mr. Bailey objectively would no longer have felt free to leave. See id. at 309-11, 19 P.3d 1100. Officer Walker did not use force or display authority to the same degree as cases in which courts have found a seizure. Compare RP at 5-9 (Officer Walker did not illuminate spotlight, emergency lights, or siren; asked Mr. Bailey whether he had a minute, first at a volume too low for Mr. Bailey to hear; and then asked only where Mr. Bailey was going and if he had any identification) with, e.g., Harrington, 167 Wash.2d at 660-62, 222 P.3d at 93-94 (one of two officers present asked person to remove his hands from his pockets and requested permission to pat him down).

PRETEXTUAL STOP
¶ 13 Mr. Bailey also contends that we could affirm the trial court's suppression order on the ground that Officer Walker conducted an unconstitutional pretextual stop under article I, section 7 of the Washington Constitution. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). However, Ladson prohibits investigatory stops in which a stop and subsequent search for a traffic offense is used as a pretext for a criminal investigation. Id. at 353, 979 P.2d 833. And, since the circumstances here fall within the "amorphous area in our jurisprudence" carved out for so-called social contacts, the officer's actions did not constitute an investigatory stop. Harrington, 167 Wash.2d at 664, 222 P.3d at 95. Again, the officer did not illuminate his spotlight, emergency lights, or siren. He simply asked Mr. Bailey, who was on foot, whether he had a minute to talk, where he was going, and whether he would provide identification.
¶ 14 We reverse the order to suppress and remand for further proceedings.
¶ WE CONCUR: KULIK, C.J., and KORSMO, J.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).