[No. 28573-1-III.   Division Three.   July 12, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ELMER BLAKE DILUZIO, JR., *Appellant*.

586

*David N. Gasch* (of *Gasch Law Office*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 KULIK, C.J. — Elmer B. Diluzio Jr. was convicted of two counts of possession of a controlled substance. A police officer with 13 years of experience pulled over Mr. Diluzio's vehicle based on the officer's suspicion that Mr. Diluzio was soliciting prostitution. The area was known for prostitution. There was no police informant and the officer did not see money exchanged or overhear any conversation between Mr. Diluzio and the female pedestrian. Neither party was known to be involved in prostitution. The officer seized drugs found on Mr. Diluzio after a search incident to arrest.

¶2 On appeal, Mr. Diluzio contends his convictions should be reversed because the police officer lacked a reasonable suspicion to stop and investigate whether soliciting prostitution took place. Based on *State v. Doughty*,[1] decided after the trial court's decision, we conclude that the totality of the circumstances do not support a reasonable suspicion that Mr. Diluzio was engaged in soliciting prostitution. Accordingly, we reverse the denial of the suppression motion and reverse the convictions for drug possession.

## FACTS

¶3 At 10:40 p.m., on January 18, 2009, a Spokane police officer saw a vehicle stopped in the eastbound lanes of

---

[1] 170 Wn.2d 57, 239 P.3d 573 (2010).

traffic on Sprague, approaching Sherman. The driver of the vehicle was talking to a female pedestrian through the passenger window. The police officer stopped in the lane of traffic behind the vehicle and watched as the woman got into the front passenger seat of the vehicle. There were no bus stops at the location, and the area was known for high levels of prostitution activity. Suspecting that solicitation of prostitution was occurring, the police officer stopped the vehicle.

¶4 When the officer asked the driver for identification, the man gave a false name. He then provided the officer with the name Elmer Blake Diluzio Jr., which is the man's real name. Mr. Diluzio also disclosed there was a warrant for his arrest. The officer arrested Mr. Diluzio for failure to cooperate by providing the false identification. The officer also arrested Mr. Diluzio for the outstanding warrant.

¶5 During the search incident to arrest, a "baggie" with a white rock substance and a black, tar-like substance was found in Mr. Diluzio's back pocket. The substances were field tested and found to be methamphetamine and heroin. Mr. Diluzio was then additionally arrested for possession of a controlled substance.

¶6 The trial court denied Mr. Diluzio's motion to suppress. He was convicted of two counts of possession of a controlled substance. This appeal followed.

## ANALYSIS

¶7 On review of the denial of a motion to suppress, this court must determine "whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "Substantial evidence" is "enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). A trial court's conclusions of law following a suppression hearing are reviewed de novo. *State v. Bailey*, 154 Wn. App. 295, 299,

224 P.3d 852, *review denied*, 169 Wn.2d 1004 (2010). Further, the question of whether an investigatory stop, or warrantless seizure, is constitutional is a question of law reviewed de novo. *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

¶8 "The Fourth Amendment to the United States Constitution protects against unlawful search and seizure." *Doughty*, 170 Wn.2d at 61 (footnote omitted). Article I, section 7 of the Washington Constitution protects against unlawful government intrusions into private affairs. *Id.* A seizure occurs when, considering all of the surrounding circumstances, a reasonable person would not feel free to leave. *State v. Richardson*, 64 Wn. App. 693, 696, 825 P.2d 754 (1992) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). This includes situations involving traffic stops. *Doughty*, 170 Wn.2d at 62.

¶9 One exception to the prohibition on warrantless seizures is a law enforcement officer's investigatory stop of a vehicle if he or she has a reasonable suspicion to believe that criminal activity is indicated. *State v. Little*, 116 Wn.2d 488, 497-98, 806 P.2d 749 (1991). The State must establish the exception by clear and convincing evidence. *Garvin*, 166 Wn.2d at 250.

¶10 To be lawful, an investigatory stop, also referred to as a *Terry* stop, must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. The standard for articulable suspicion is "a substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). "A *Terry* stop requires a well-founded suspicion that the defendant engaged in criminal conduct." *Doughty*, 170 Wn.2d at 62. "A person's presence in a high-crime area at a 'late hour' does not, by itself, give rise to a reasonable suspicion to detain that person." *Id.*

¶11 An investigatory stop must be justified at its inception. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d

426 (2008). A court must consider the totality of the circumstances surrounding the investigatory stop to evaluate reasonableness. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). In particular, the experience of the officer, the location of the stop, and the conduct of the defendant are factors used to determine if the officer's suspicions are reasonable. *Id.*

¶12 Mr. Diluzio contends his convictions must be reversed because the officer lacked a reasonable suspicion to believe that Mr. Diluzio was committing a crime.

¶13 In *Richardson*, police stopped Jerry Richardson in an area known for high drug activity as he was walking with a man suspected of being a drug runner. *Richardson*, 64 Wn. App. at 697. The officer asked Mr. Richardson and the other man if he could talk to them and then asked them to empty their pockets and put their hands on the trunk of the car. *Id.* at 696. After Mr. Richardson consented to a search, the officer found cocaine in Mr. Richardson's pocket and arrested him for possession of a controlled substance. *Id.* at 695.

¶14 The court found that the seizure was unreasonable based on the fact that "[a] person's presence in a high crime area does not, by itself, give rise to a reasonable suspicion to detain him." *Id.* at 697. In addition, at the time of the seizure, the officer knew only that Mr. Richardson was in a high crime area and that he was walking with an individual suspected of criminal activity. Significantly, the officer did not hear any conversations or see any suspicious activity between the two men to justify a seizure. *Id.* These facts indicated that the officer did not have a reasonable suspicion to believe a crime had occurred or was about to occur. *Id.*

¶15 In *Doughty*, the police stopped Walter Doughty's car after he briefly visited a suspected drug house at 3:20 a.m. 170 Wn.2d at 60. The information that the house was used to distribute drugs was based on complaints from neighbors and information provided by an informant. *Id.* The officer arrested Mr. Doughty after a records check revealed that

Mr. Doughty's license was suspended. *Id.* The subsequent search of Mr. Doughty's vehicle revealed a pipe containing methamphetamine residue. Methamphetamine was found in Mr. Doughty's shoe at booking. *Id.* The trial court denied Mr. Doughty's motion to suppress, and he was convicted of one count of possession of methamphetamine. *Id.* at 61.

¶16 In *Doughty*, the court concluded that the officer's actions were based on his own "incomplete observations." *Id.* at 64. The court determined that *Doughty* is factually similar to *Richardson* because the officer did not hear any conversations or observe any suspicious activities other than Mr. Doughty's leaving a house in the middle of the night. *Id.* The court reasoned:

> [P]olice never saw any of [Mr.] Doughty's interactions at the house. . . . The two-minute length of time [Mr.] Doughty spent at the house—albeit a suspected drug house—and the time of day do not justify the police's intrusion into his private affairs.

*Id.*

¶17 The court also compared the facts in *Doughty* to the facts in *State v. Gleason*, 70 Wn. App. 13, 851 P.2d 731 (1993). *Doughty*, 170 Wn.2d at 64-65. In *Gleason*, a stop was found to be unreasonable when it was based only on the defendant's exit from an apartment building known for drug sales and the absence of any other behaviors indicating drug-related activity, such as carrying a suspicious package. *Gleason*, 70 Wn. App. at 18.

¶18 The *Doughty* court noted that the facts in *Kennedy* were distinguishable. *Doughty*, 170 Wn.2d at 63. In *Kennedy*, the police officer had information about a suspected drug house, as well as information from an informant alleging the defendant, Mr. Kennedy, went to the house to purchase drugs. *Kennedy*, 107 Wn.2d at 3.

¶19 The officer saw Mr. Kennedy's car in front of the house. After Mr. Kennedy exited the house, the police officer pulled him over. *Id.* The officer observed Mr. Kennedy place something under the front seat of the car. When the officer searched the vehicle, he found drugs under the seat and

arrested Mr. Kennedy. *Id.* at 3-4. The court found that the information from the informant as well as the police officer's independent corroboration of the informant's facts provided enough specific and articulable information for the stop to be reasonable. *Id.* at 8-9.

¶20 The facts in Mr. Diluzio's case are similar to those in *Doughty* and provide even less justification for a stop. Here, as in *Doughty*, the investigatory stop was based on the officer's observation. The officer saw Mr. Diluzio having a conversation with a woman who got into the passenger side of his vehicle. There was no police informant, and the police officer did not see any money change hands and did not overhear any conversations between the two individuals. Neither individual was known to have been involved in prostitution or solicitation activities. These incomplete observations do not provide the basis for a *Terry* stop.

¶21 Even with the officer's 13 years of experience, the location of the stop, and the lack of open businesses or residences, the totality of the circumstances do not support a conclusion of a reasonable suspicion of criminal activity.

¶22 Simply stated, the officer lacked sufficient specific and articulable facts to seize Mr. Diluzio. Because the *Terry* stop was unlawful, the motion to suppress should have been granted. We reverse Mr. Diluzio's convictions.

SWEENEY, J., concurs.

¶23 KORSMO, J. (dissenting) — The veteran officer believed the encounter he observed suggested the possibility of solicitation of prostitution. The veteran trial judge agreed. Since the record adequately supports the basis for the stop, the convictions should be affirmed. I respectfully dissent.

¶24 As noted by the majority, Washington applies the articulable suspicion standard of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), to investigative stops

implicating the protections of article I, section 7 of our state constitution. *State v. Kennedy*, 107 Wn.2d 1, 4-6, 726 P.2d 445 (1986). When an officer can articulate the basis for believing possible criminal activity is afoot, a brief detention to investigate is permissible. *Terry*, 392 U.S. at 21. The test is whether the facts known to the officer show "a substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy*, 107 Wn.2d at 6. Immediately after adopting that test, the *Kennedy* court stated, "When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention." *Id.*

¶25 *State v. Doughty*, 170 Wn.2d 57, 239 P.3d 573 (2010), does not change those standards. There the court concluded that a brief middle-of-the-night stop at a suspected drug house did not supply articulable suspicion of wrongdoing. *Id.* at 64-65. There was no indication that Mr. Doughty was a known drug user or that he typically purchased drugs from the residence, nor was there any evidence that he entered the house or even spoke to anyone there. *Id.* at 64. Under these facts, the court concluded that no crime had been articulated. *Id.* at 64-65.[2] That is not the situation here.

¶26 More relevant is *United States v. Luqman*, 522 F.3d 613 (6th Cir.), *cert. denied*, 555 U.S. 1020 (2008). There a pair of veteran Akron police officers, one of whom had spent two months investigating prostitution as a member of the vice squad, saw the defendant stop his truck in the lane of travel and talk to a woman who had been standing on the street corner. When the officers pulled in behind the truck, the woman ran back to the sidewalk. The driver started to pull forward and the officers activated their lights. *Id.* at 615. The officers contacted the driver, discovered that his license was suspended, and arrested him. A handgun was

---

[2] In essence, *Doughty* is simply an application of the rule that being in a "high crime area" is not enough to justify a *Terry* stop to a suspected drug house. See *State v. Richardson*, 64 Wn. App. 693, 697, 825 P.2d 754 (1992), discussed in the majority opinion.

discovered and charges were filed. *Id.* After a motion to suppress was denied, the defendant was convicted and appealed. *Id.* at 615-616.

¶27 The Sixth Circuit affirmed, concluding that the officers had articulated sufficient suspicion to justify the initial *Terry* stop. Specifically, the driver had stopped his car in the lane of travel, in an area known for prostitution, to talk to a woman, who then left when the police approached. *Id.* at 617.

¶28 This case is in a nearly identical fact pattern. Mr. Diluzio stopped his car in the driving lane[3] of east Sprague Avenue, a notorious Spokane prostitution area.[4] It was late on a Sunday evening, the businesses were closed, there was no bus stop nearby, and there were no residences in the neighborhood. Mr. Diluzio was talking through the window to a female who then got into his passenger seat. As in *Luqman*, the officer observing this behavior had also worked special prostitution details in the past and had made prostitution arrests in this area. Unsurprisingly, the officer believed prostitution *might* be occurring here. While the conversation may have been innocent, that is not the test. *Kennedy*, 107 Wn.2d at 6. Instead, the question is whether these circumstances suggested criminal behavior. *Id.* Unlike *Doughty*, where the officer could articulate only the apparently innocent conduct of a person stopping at a house, here the officer's observations suggested that solicitation of prostitution was occurring.

¶29 As did the Sixth Circuit, we should be affirming. The officer articulated specific facts that led him to believe a crime might be occurring. That is all that *Terry*, *Kennedy*, or *Doughty* requires.

¶30 I would affirm.

Review denied at 173 Wn.2d 1002 (2011).

---

[3] An act that violates Spokane Municipal Code 16A.61.560(A): "Except as specifically allowed by City ordinance or permit, no person may stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway."

[4] *See State v. Yates*, 161 Wn.2d 714, 729, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008).