FILED
COURT OF APPEALS
DIVISION II

2013 MAR 26 AM 9: 28

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42259-0-II |
| Respondent, | (Consolidated with No. 42262-0-II) |
| v. | |
| HARRY LEE THOMAS, III, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Harry Lee Thomas, III appeals his convictions of two counts of unlawful possession of a controlled substance (methamphetamine) under separate cause numbers. Thomas argues that the discovery of methamphetamine in one case was the result of an illegal traffic stop and that the discovery of methamphetamine in the other case was the result of an unlawful search. Finding no basis for error, we affirm the convictions.

## FACTS

Geoffrey Aguirre called 911 to report a man standing over another man and shouting at him in a Longview alley. Aguirre told the 911 operator that the man doing the yelling was associated with a gray sport utility vehicle (SUV), which was parked in the middle of the alley. Aguirre then told the operator when the SUV began pulling out of the alley.

The responding officers saw a gray SUV leaving the alley Aguirre had described. When they stopped it, they discovered that Thomas, the driver, had a suspended license. They also discovered that his passenger had a bloody hand and a head wound. The officers arrested Thomas for driving with a suspended license, searched him incident to arrest, and seized a pipe containing methamphetamine residue from his pants pocket.[1]

The State charged Thomas with unlawful possession of a controlled substance and third degree driving with a suspended license. Thomas moved to suppress the pipe, arguing that his detention was unlawful. The trial court denied the motion and found Thomas guilty following a stipulated facts trial.

On a separate occasion, a Washington State Patrol trooper stopped Thomas's car for speeding. When the trooper discovered that Thomas was driving with a suspended license, he arrested Thomas and placed him in the patrol car. Cowlitz County Deputy Sheriff Jennifer Prusa provided assistance and brought her K-9 unit. The dog was trained in narcotics detention, and Prusa ran the dog around the exterior of Thomas's car. The dog alerted twice on the driver's side front wheel well. After the officers impounded the car and obtained a search warrant, they found a black lockbox between the battery and fuse box that contained methamphetamine and marijuana.

The State charged Thomas with unlawful possession of methamphetamine with intent to deliver, unlawful possession of marijuana, and third degree driving with a suspended license. Thomas pleaded guilty to the two latter counts and moved to suppress the methamphetamine, arguing that the canine sniff around his car constituted an unlawful warrantless search. The trial

---

[1] The officers seized additional contraband inside the SUV that the trial court suppressed pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

court denied the motion to suppress and the jury convicted Thomas of the lesser included offense of unlawful possession of methamphetamine.

The trial court sentenced Thomas contemporaneously under both cause numbers, and he now appeals his two convictions for possessing methamphetamine.

DISCUSSION

INVESTIGATIVE DETENTION

Thomas argues that because the police lacked the reasonable suspicion necessary to stop and detain him in response to the 911 call, his subsequent arrest and seizure were unlawful. As a consequence, he asserts that the trial court erred in failing to suppress the pipe containing methamphetamine residue.

The Fourth Amendment protects against unlawful search and seizure, and article I, section 7 of the Washington Constitution protects against unlawful government intrusions into private affairs. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). A seizure occurs when, considering all the circumstances, a reasonable person would not feel free to leave. *State v. Diluzio*, 162 Wn. App. 585, 590, 254 P.3d 218, *review denied*, 272 P.3d 850 (2011). Warrantless seizures are per se unreasonable, and the State must demonstrate that a warrantless seizure falls into a narrow exception to the rule. *Doughty*, 170 Wn.2d at 61.

One exception to the prohibition on warrantless seizures is a law enforcement officer's investigatory stop of a vehicle if he or she has a reasonable suspicion to believe that criminal activity is indicated. *Diluzio*, 162 Wn. App. at 590. To be lawful, an investigatory stop, also known as a *Terry*[2] stop, must be based on "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Diluzio*, 162 Wn.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

App. at 590 (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The standard for articulable suspicion is a "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

Whether a warrantless seizure or a *Terry* stop passes constitutional muster is a question of law that we review de novo. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852, *review denied*, 169 Wn.2d 1004 (2010). The State must establish the exception by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). The purpose of the *Terry* rule is to stop police from acting on mere hunches; it is generally recognized that crime prevention and crime detection are legitimate purposes for investigative stops or detentions. *Doughty*, 170 Wn.2d at 63; *Kennedy*, 107 Wn.2d at 5-6.

Thomas argues that his detention was indistinguishable from those found to lack adequate justification in *Doughty* and *Diluzio*. In *Doughty*, the Supreme Court found an investigative stop unlawful where it was preceded only by the officer's observation of the defendant approaching and leaving a suspected drug house at 3:20 AM. 170 Wn.2d at 64. The two minutes that the defendant spent at the house and the time of day did not justify the officer's intrusion into his private affairs. *Doughty*, 170 Wn.2d at 64.

The investigatory stop in *Diluzio* was based on the officer's suspicions that the defendant was soliciting prostitution. 162 Wn. App. at 588. The officer saw the defendant having a conversation with a woman who got into the passenger seat of his vehicle. *Diluzio*, 162 Wn. App. at 593. There was no police informant, the officer saw no money change hands, and he did not overhear any conversation between the two, neither of which was known to be involved in

prostitution or solicitation activities. The *Diluzio* court concluded that the totality of the circumstances did not support a reasonable suspicion of criminal activity. 162 Wn. App. at 593.

Here, on the other hand, the officers responded to a 911 call from a citizen regarding activity that concerned him. Aguirre, the caller, saw a man standing over another man in an alley and yelling at him. Aguirre reported that the man doing the yelling was associated with a gray SUV that was parked in the middle of the alley. He told the 911 operator when the vehicle was leaving, and when the responding officers saw a gray SUV pull out of the alley in question, they stopped it.

The officers were relying on more than a hunch when they stopped Thomas's car. Having received a 911 call from a concerned citizen, they were obligated to investigate, particularly where the facts described were consistent with a possible kidnapping, assault, harassment, or other crime. The brief investigative detention was reasonable, and the trial court did not err in denying Thomas's motion to suppress.

CANINE SNIFF OF VEHICLE

Thomas also argues that the warrant authorizing the search of his car was not adequately supported by probable cause because the search warrant affidavit was based solely on an unlawful canine sniff. This issue is not properly before us because he has not included as part of the record before us on appeal either the search warrant or the affidavit of probable cause, both of which are necessary for our review and which RAP 9.6 required him to provide.

Consol. Nos. 42259-0-II / 42262-0-II

Affirmed.

A majority, of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

HUNT, P.J.

VAN DEREN, J.