# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON<br><br>            Respondent,<br><br>v.<br><br>DIANTRIE JEFFERSON,<br><br>            Appellant. | No. 69119-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 18, 2013 |

SPEARMAN, A.C.J. — Diantrie Jefferson appeals his conviction for unlawful possession of a firearm, arguing that the seat belt infraction police relied on to stop his vehicle was a pretext for a criminal investigation, and that the gun found on him after the stop should have been suppressed. Because the State had the burden of proving a valid basis for the stop by clear and convincing evidence, and because the trial court applied a lesser standard of proof in denying Jefferson's motion to suppress, we remand for application of the correct standard of proof.

## FACTS

Based on Jefferson's felon status and possession of a firearm, the State charged him with second degree unlawful possession of a firearm. Prior to trial, Jefferson moved to suppress the gun on the ground that the traffic stop was a pretext for an unlawful warrantless seizure. The court denied the motion and found the following facts.

On October 29, 2011, three members of the King County Sherriff's Gang Unit, Detectives Matthew Olmstead and Todd Miller and Department of Corrections neighborhood specialist Kris Rongen, encountered Jefferson while patrolling south King County in a black, Cadillac Escalade. They were looking for criminal activity near a gas station when Rongen saw a black male, later identified as Jefferson, pull out of the gas station without his seatbelt on. Rongen does not remember whether he said anything about his observation at that time.

The officers proceeded north on First Avenue South and soon found themselves behind Jefferson's vehicle. Detective Miller, who was in the rear passenger seat, noticed that the shoulder strap of Jefferson's seatbelt was hanging vertically to his left rather than crossing in front of his torso. Miller told Olmstead and Rongen that Jefferson was not wearing a seatbelt, in violation of RCW 46.61.688(3).[1] Olmstead and Rongen each visually confirmed Miller's observation. Miller did not know Jefferson's ethnicity and none of the officers had any previous knowledge of Jefferson or his vehicle.

Detective Miller instructed Rongen to initiate a traffic stop. Rongen activated the Escalade's emergency lights and Jefferson pulled into a parking lot. Olmstead approached Jefferson's vehicle on the driver's side while Detective Miller approached the passenger side. Specialist Rongen stood a short distance

---

[1] RCW 46.61.688(3):

(3) Every person sixteen years of age or older operating or riding in a motor vehicle shall wear the safety belt assembly in a properly adjusted and securely fastened manner.

away. Prior to reaching Jefferson's vehicle, the officers learned that Jefferson was a convicted felon.

When the officers reached the vehicle, Jefferson was not wearing any part of a seatbelt. Detective Olmstead spoke to Jefferson, saying "hey bud, you weren't wearing a seatbelt." He then asked for Jefferson's driver's license. Jefferson was extremely nervous, visibly trembling, and repeating the questions he was asked.

Based on Jefferson's nervousness, his felon status, and the fact that he had taken the time to park his vehicle in a parking space when pulled over, Detective Olmstead believed Jefferson could be armed. He directed Jefferson to step out of the vehicle. Before Jefferson did so, Detective Miller noticed a black plastic clip on the outer right side of Jefferson's sweatpants. In Miller's experience, such a clip, worn in such a manner, indicates a gun holster on the inside of a person's pants. As Jefferson moved, Miller saw a bulge below the clip that weighed down the waistband. This indicated the clip was supporting something heavy.

Detective Miller shouted "gun" to alert the other officers. Detective Olmstead and Specialist Rongen grabbed and handcuffed Jefferson. Detective Miller asked if he was carrying a gun, and Jefferson responded affirmatively. Miller then asked if the gun would go off if it were removed from the holster. Jefferson said it would not go off. Miller then removed a loaded handgun from

the holster inside Jefferson's sweatpants. The officers arrested Jefferson for unlawful possession of a firearm in the second degree.

In denying Jefferson's pretrial motion to suppress the gun, the trial court expressly found the officers' testimony credible. The court also found Jefferson's testimony credible "except as to the issue of whether the defendant's nervousness had anything to do with the fact that the defendant knew he was illegally possessing a firearm." Clerk's Papers (CP) at 86. The court concluded that

> (a) [b]ased on the officers' observations as they were driving behind [Jefferson's] vehicle, there was both reasonable suspicion and probable cause to believe that [Jefferson] was committing a traffic violation by driving without a seatbelt in violation of RCW 46.61.688(3).
>
> (b) The true reason, and the only reason, for the stop of the defendant's vehicle was to investigate the seatbelt violation.
>
> (c) Because **the initial traffic stop of the defendant's vehicle was not pretextual** and was supported by reasonable and articulable suspicion that the defendant was committing a traffic violation, the stop was lawful.
>
> (d) Based on the totality of the circumstances, including the defendant's extreme nervousness, the fact that he had taken the time to park his vehicle in a parking space when pulled over, and the knowledge that the defendant was a convicted felon, Detective Olmstead had a reasonable and articulable suspicion that the defendant was armed, and was justified in instructing the defendant to exit the vehicle based on his concern for officer safety.
>
> (e) Removing the defendant from the vehicle was a de minimis invasion of the defendant's privacy right, and did not exceed the permissible scope of a traffic stop.
>
> . . .
>
> (h) Because (1) the initial traffic stop was lawful, (2) Detective Olmstead's instruction to exit the vehicle did not exceed the permissible scope of a

traffic stop, and (3) Detective Miller's observation of a clip before the defendant began to exit the vehicle created a reasonable suspicion justifying a Terry stop independent of Detective Olmstead's instruction, the recovery of the firearm was lawful and the defendants motion to suppress is denied in its entirety. ***The State has carried its burden by a preponderance of the evidence.***[2]

The court also incorporated its oral findings and conclusions by reference. Twice during its oral ruling, the court said the pretext issue presented "a close case but I believe that the State has carried its burden by a preponderance of the evidence[.]" Verbatim Report of Proceedings (VRP) at 67.

Following a bench trial on stipulated facts, the court found Jefferson guilty as charged. He appeals.

## DECISION

The principal issue on appeal is whether the trial court erred in concluding that the stop of Jefferson's vehicle was pretextual. Because the court applied the wrong standard of proof, we remand for further proceedings.

A warrantless seizure is unconstitutional unless it falls within certain narrowly drawn exceptions to the warrant requirement. State v. Ladson, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). Investigatory detentions, including warrantless stops for traffic infractions, are a recognized exception. State v. Rife, 133 Wn.2d 140, 150-51, 943 P.2d 266 (1997); State v. Duncan, 146 Wn.2d 166, 174-75, 43 P.3d 513 (2002). Police may conduct a warrantless traffic stop if the officer has a reasonable and articulable suspicion that a traffic violation has occurred or is occurring. Ladson, 138 Wn.2d at 349.

___

[2] (Emphasis added). CP at 87.

But if the asserted basis for a traffic stop is a pretext for a warrantless investigation, the stop violates article I, section 7 of the Washington Constitution. State v. Nichols, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). In determining whether a stop was pretextual, courts consider the totality of the circumstances, including "both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wn.2d at 358-59. The State has the burden of proving by clear and convincing evidence that a warrantless seizure falls within an exception to the warrant requirement. State v. Diluzio, 162 Wn. App. 585, 590, 254 P.3d 218, rev. denied, 272 P.3d 850 (2011); State v. Doughty, 170 Wn.2d 57, 62, 239 P.3d 573 (2010); State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). We review a court's conclusion regarding pretext de novo. State v. Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012).

Here, Jefferson contends the officers' traffic stop was a pretext for a criminal investigation. He assigns error to a number of the court's findings of fact, the exclusion of a video, and the court's conclusion that the stop was not pretextual. We decline to reach these issues because the trial court's findings and conclusions were based on the wrong standard of proof.[3]

As noted above, it is the State's burden to prove by clear and convincing evidence that a warrantless seizure falls within an exception to the warrant

---

[3] We note that many of these assignments of error are improperly presented in footnotes and are not adequately supported by argument in Jefferson's opening brief.

requirement. Doughty, 170 Wn.2d at 62.[4] It is undisputed that the trial court did not use this standard, but instead employed the less stringent preponderance of the evidence standard. Accordingly, we must remand for the court to apply, and enter findings based on, the correct standard of proof.[5] Cf. Nguyen v. State Department of Health Medical Quality Assurance Commission, 144 Wn.2d 516, 29 P.3d 689 (2001) (where commission used preponderance standard of proof but due process required clear, cogent and convincing evidence, court remanded for commission to "determine this matter by clear and convincing proof"); Nims v. Washington Bd. of Registration, 113 Wn.App. 499, 505-06, 53 P.3d 52 (2002)(where Board erred in basing findings on mere preponderance of the evidence, remand was required for Board to "make new findings based on clear, cogent and convincing evidence."). If the trial court finds the evidence from the search admissible, the conviction shall stand affirmed. If the trial court finds the evidence inadmissible, the conviction shall be reversed.

---

[4] The State contends "the precedent that every exception to a warrantless search or seizure must be proven by clear and convincing evidence is erroneous, and arises from the recent dictum in Garvin [State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009)] . . . ." Resp. Br. at 21. This contention echoes the dissent's position in Doughty, 170 Wn.2d at 67 n.6, a position the Doughty majority implicitly rejected. Doughty, 170 Wn.2d at 62.

[5] In remanding this matter, we emphasize the fact that the trial judge, who had the benefit of hearing and evaluating the witnesses, stated that the pretext issue presented a "close case."

Remanded for further proceedings consistent with this opinion.

WE CONCUR:

Spearman, A.C.J.

Dwyer, J.

Becker, J.