[No. 12782-2-II.   Division Two.   January 30, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. MARCUS
THIERRY, *Appellant*.

446

*Valla M. Wagner,* for appellant.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *Michael A. Fritch, Legal Intern,* for respondent.

WORSWICK, C.J.—Marcus Thierry appeals a juvenile conviction of carrying a loaded pistol in a vehicle without a license to carry a concealed weapon. RCW 9.41.050(3). He claims that evidence of the pistol should have been suppressed and that the evidence was insufficient to support the conviction. We affirm.

Substantial evidence and essentially undisputed findings of fact support the following recitation. Two Tacoma police officers, working off duty as security officers for Pierce Transit, observed Thierry, then under 18, with a teenage passenger, David Johnson, driving slowly past the 10th and Commerce transit stop in downtown Tacoma about 3 p.m. one winter afternoon. This is a high crime area with a high

incidence of gang activity, drug traffic, and violence. Despite the 40–degree weather, Thierry and Johnson had the windows of Thierry's 1978 Buick Electra rolled down, and the radio was playing loud enough to draw the attention of the officers and others in the area.

The officers continued to watch Thierry and Johnson, who were both slouched down in the front seat of the car, as they drove into a parking lot on Commerce adjacent to the transit area. Although there were many empty slots in the lot, Thierry drove around it, made no attempt to park, and stopped when he got back to the entrance.

The activity of Thierry and Johnson fit the Tacoma Police Department's profile of drive–by shootings, so the officers approached the car. As they drew near, Thierry immediately turned down his radio, and one of the officers saw a 2–foot–long wooden bat on the floor at Thierry's feet. He also noticed that Johnson was making furtive hand motions. The officers, concerned for their personal safety, ordered Thierry and Johnson to bring their hands into view.

As an officer walked to the driver's side of the car, he immediately saw a cocked semiautomatic pistol between the front armrests. The occupants had not been ordered out of the car before the officer spotted the pistol, and neither officer had his own gun drawn. The officers found another gun and knives in the car. After being advised of his rights, Thierry told the officers that he knew the guns were in the car and that he and Johnson, to whom the guns belonged, carried them for their own protection.

Thierry first contends that the initial stop made by the officers was invalid and that the court erred in denying his motion to suppress. We disagree.

■ An investigative stop, although less intrusive than an arrest, is nevertheless a seizure and must therefore be reasonable under the Fourth Amendment to the United States Constitution and under Const. art. 1, § 7. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). When the initial stop is unlawful, the ensuing search and its results

are inadmissible as "fruits of the poisonous tree." *Kennedy,* 107 Wn.2d at 4 (quoting *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)).

A stop is justified if the officer has "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Kennedy,* 107 Wn.2d at 5 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); *State v. Williams,* 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (in determining propriety of investigative stop, court first asks whether initial interference with the suspect's freedom was justified at its inception); *State v. Rice,* 59 Wn. App. 23, 26, 795 P.2d 739 (1990). Thierry contends that since no crime had been reported, the officers could have had no reasonable suspicion that he had committed a crime and, further, that the officers had no reason to believe a crime was about to be committed. Again, we disagree.

█ The officers, working a high crime area, observed behavior consistent with the profile of drive–by shootings. They were not required to ignore their observations. *State v. Samsel,* 39 Wn. App. 564, 694 P.2d 670 (1985). Circumstances that might appear innocuous to the average person may appear incriminating to a police officer in light of past experience, and the officer may bring that experience to bear on a situation, as the officers did here. *Samsel,* 39 Wn. App. at 570–71. It is necessary only that the circumstances at the time of the stop be more consistent with criminal than innocent conduct. *State v. Mercer,* 45 Wn. App. 769, 774, 727 P.2d 676 (1986).

█ Even if Thierry's behavior might arguably be viewed as innocent, the ultimate test for reasonableness of an investigative stop involves weighing the invasion of personal liberty against the public interest to be advanced. *Samsel,* 39 Wn. App. at 570. Officers may do far more if the suspect conduct endangers life or personal safety than if it does not. *See State v. McCord,* 19 Wn. App. 250, 253, 576 P.2d 892, *review denied,* 90 Wn.2d 1013 (1978). Given the high crime character of the area in question and the drive–

by shooting profile, "the facts in existence immediately prior to the stop [did] not comport with innocent activity." *Mercer,* 45 Wn. App. at 775 (upholding validity of initial stop when officer had approached car in school parking lot because car's dome light was flashing; officer then saw water pipe on ground by the car and six mag wheels of various sizes in car). The officers' intrusion in this case was negligible, and their seizure of the pistol and additional weapons was valid.

█ Thierry next contends that the evidence was insufficient because he could not be convicted of the offense absent evidence that he either placed the gun in the car or "possessed" it (either "constructively possessed" it or had it on his person) while it was there. He is incorrect.

RCW 9.41.050(3) states:

> A person shall not *carry or place* a loaded pistol in any vehicle unless *the person* has a license to carry a concealed weapon *and:* (a) *The pistol is on the licensee's person,* (b) the licensee is within the vehicle at all times that the pistol is there, *or* (c) the licensee is away from the vehicle and the pistol is locked within the vehicle and concealed from view from outside the vehicle.

(Italics ours.) The verbs "carry" and "place" are stated in the disjunctive. The State had to prove that Thierry did one or the other, not both. Indisputably, neither Thierry nor Johnson had a gun license.[1] Thierry admitted he knew the gun was in the car, and he controlled and drove the car. The State proved that Thierry "carried" the gun in the car.

█ When construing a statute, we give effect to all language used; no word is superfluous. *Powell v. Viking Ins. Co.,* 44 Wn. App. 495, 500, 722 P.2d 1343 (1986). We also avoid absurd results. *Briggs v. Thielen,* 49 Wn. App. 650, 654, 745 P.2d 523 (1987), *review denied,* 110 Wn.2d 1020 (1988). Undefined statutory terms (such as "carry") are given their ordinary meaning. *Northwest Steel Rolling Mills, Inc. v. Department of Rev.,* 40 Wn. App. 237, 240, 698 P.2d 100, *review denied,* 104 Wn.2d 1006 (1985).

---

[1] A license cannot be issued to anyone under 21. RCW 9.41.070(1)(b).

"Carry," as a transitive verb, means "to move while supporting (*as in a vehicle* or in one's hands or arms)". (Italics ours.) *Webster's Third New International Dictionary* 343 (1969) (quoted definition is first listed; definition 8a is "to hold, wear, or have upon one's person"). That is the meaning of carry intended by the Legislature. Had the Legislature intended the word to mean "to have on one's person," the language in subsection (a) ("The pistol is on the licensee's person,") would be superfluous.

Substantial evidence supported the juvenile court's conclusion that Thierry carried the gun in his car. *Accord, State v. Williams,* 636 P.2d 1092 (Utah 1981); *Anchorage v. Lloyd,* 679 P.2d 486 (Alaska Ct. App. 1984).[2]

Affirmed.

PETRICH and ALEXANDER, JJ., concur.

---

[2]Because Thierry admitted he knew the gun was there, we need not consider whether the statute contemplates a defense similar to unwitting possession in controlled substances cases, *see State v. Cleppe,* 96 Wn.2d 373, 380–81, 635 P.2d 435 (1981), *cert. denied,* 456 U.S. 1006 (1982). We note, however, that Division Three of this court has considered the "strict liability" nature of RCW 9.41.050(3) in deciding that proof of the person's intent or guilty knowledge is not required. *State v. Anderson,* 54 Wn. App. 384, 386, 773 P.2d 882 (1989) (rejecting defendant's argument that he did not know the gun was loaded).