FILED
COURT OF APPEALS
DIVISION II

2014 FEB 11 AM 8:38

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>v.<br><br>SAM NANG YOU,<br><br>                    Appellant. | No. 43738-4-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Sam Nang You appeals his conviction of first degree unlawful possession of a firearm, arguing that (1) the firearm's discovery was the result of an illegal stop of the car in which he was a passenger, (2) the State failed to prove that he constructively possessed the firearm, and (3) the trial court erred in rejecting his request to continue sentencing so that he could argue that some of his prior offenses counted as one under the same criminal conduct rule. We hold that the stop of the car was justified and that the State provided sufficient evidence of constructive possession, but that the trial court erred in refusing to continue sentencing. We affirm the conviction, but remand for resentencing.

## FACTS

Shortly after 11:00 PM on March 4, 2012, Puyallup Tribal Police Officer Joey Tracy responded to the 3700 block of East Roosevelt Avenue to assist Tacoma police officers in finding a vehicle involved in a drive-by shooting near the 6400 block of East Portland Avenue. The majority of Tracy's work involves investigating gang-related crimes. Based on his training

and experience, Tracy knew this location to be a high-crime area with frequent incidents of gang activity and violence.

Tacoma dispatch described the suspect car as a black Pontiac Grand Prix last seen heading northbound on East Portland Avenue. While Officer Tracy was patrolling the area in search of the Pontiac, his vehicle was approached from behind by a dark blue sedan with its high beam headlights activated. Tracy saw the blue sedan, which contained three occupants, circle the block and leave the area. Tracy continued to investigate the drive-by shooting.

About five minutes later, Officer Tracy saw the blue sedan turn from East 35th onto East Portland Avenue. The sedan turned out in front of Tracy, who then followed it. As he did so, the driver continuously looked back at the patrol vehicle. After both vehicles turned right onto East 29th Street, Tracy saw the sedan turn right onto East R Street and drive southbound to East 35th Street, where it turned and made a full circle from where Tracy had initially seen the car.

Officer Tracy wondered why the sedan was driving in circles in an area that had just experienced a drive-by shooting. He suspected that the sedan had some involvement in the shooting based on these facts: its circling of the neighborhood moments after a drive-by shooting, the lateness of the hour, the sedan's use of its high beams, the neighborhood's many incidents of gang-related crimes and violence, the number of passengers, and the driver's behavior on noticing the officer. Although he knew he was not following a Pontiac, he thought that the dark blue sedan could have been mistaken for that vehicle.

Officer Tracy decided to stop the sedan and investigate. The driver was waiting with his license and registration paperwork and appeared both combative and unusually talkative, as though he was trying to distract the officer. Tracy noticed that the driver had the number four

2

tattooed on each forearm, which Tracy understood to be a gang-related symbol. Tracy also saw that the passengers were wearing red, which is the color associated with a Tacoma gang. The driver told Tracy he was attempting to drive through Salishan, which is an area claimed by a gang.

While Officer Tracy was contacting the driver, he noticed that You, the front seat passenger, was sitting motionless. After Tracy had the driver step out of the vehicle for a pat-down, he opened the passenger door and brought You out. When You moved his feet, Tracy saw a revolver between them that was protruding from under his seat. The gun was blocked from going completely under the seat by a plastic bottle, and its handle was wrapped with toilet paper.

Officer Tracy arrested You and the other occupants and obtained a search warrant for the vehicle. In the front center console, he found .357 ammunition that matched the ammunition in the gun. Tracy found a 9 mm semi-automatic pistol underneath the back seat and a 9 mm bullet in the jacket that had been next to the rear passenger. That passenger's identification was in the jacket.

Because You had a prior serious felony conviction, the State charged him with first degree unlawful possession of a firearm. After the trial court denied You's motion to suppress, Officer Tracy testified to the above facts, and the jury found You guilty as charged.

When the verdict was returned on June 19, You's attorney asked the court to delay sentencing until late July because a same criminal conduct analysis might apply to some of You's criminal history. Defense counsel had requested documents from the State to assist in that analysis. The State objected to the delay, and the trial court set sentencing for June 29 over defense counsel's objection.

At the June 29 sentencing hearing, defense counsel again sought a continuance of two to three weeks because he still needed police reports to determine whether some of You's prior offenses might constitute the same criminal conduct. The State responded that there was no precedent for what counsel was requesting, and the trial court denied You's request for a continuance, ruling that a same criminal conduct analysis of You's prior convictions was not appropriate. Based on an offender score of 8 that counted You's prior offenses separately, the trial court imposed a sentence of 90 months. You appeals his conviction and sentence.

## DISCUSSION

### A.    TERRY STOP

You first contends that the initial stop of the car in which he was a passenger was invalid and that the trial court erred in denying his motion to suppress. We disagree.

The Fourth Amendment protects against unlawful search and seizure, and article I, section 7 of the Washington Constitution protects against unlawful government intrusions into private affairs. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). A seizure occurs when, considering all the circumstances, a reasonable person would not feel free to leave. *State v. Diluzio*, 162 Wn. App. 585, 590, 254 P.3d 218, *review denied*, 272 P.3d 850 (2011). Warrantless seizures are per se unreasonable, and the State must demonstrate that a warrantless seizure falls into a narrow exception to the rule. *Doughty*, 170 Wn.2d at 61.

One exception to the prohibition on warrantless seizures is a law enforcement officer's investigatory stop of a vehicle based on a reasonable suspicion to believe that criminal activity is indicated. *Diluzio*, 162 Wn. App. at 590. To be lawful, an investigatory stop, also known as a *Terry* stop, must be based on "'specific and articulable facts which, taken together with rational

4

inferences from those facts, reasonably warrant [the] intrusion.'" *Diluzio*, 162 Wn. App. at 590 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The standard for articulable suspicion is a "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

Whether a warrantless seizure or a *Terry* stop is lawful is a question of law that we review de novo. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852, *review denied*, 169 Wn.2d 1004 (2010). The State must establish the exception by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). The purpose of the *Terry* rule is to stop police from acting on mere hunches. *Doughty*, 170 Wn.2d at 63; *Kennedy*, 107 Wn.2d at 5-6. Crime prevention and crime detection are legitimate purposes for investigative stops or detentions. *Doughty*, 170 Wn.2d at 63; *Kennedy*, 107 Wn.2d at 5-6. However, where no crime has been committed, simply being in a high-crime area at night is insufficient to justify a stop. *State v. Moreno*, 173 Wn. App. 479, 492, 294 P.3d 812, *review denied*, 177 Wn.2d 1021 (2013).

A police officer may rely on his experience to evaluate apparently innocuous facts. *Moreno*, 173 Wn. App. at 492; *State v. Thierry*, 60 Wn. App. 445, 448, 803 P.2d 844 (1991). Such experience was key to upholding the investigatory stop in *Thierry*, where officers watched two teenagers drive through a high-crime area one winter afternoon with the car windows rolled down and loud music playing. 60 Wn. App. at 446-47. The car drove through a parking lot containing open spaces without attempting to park and stopped at the entrance. *Thierry*, 60 Wn. App. at 447. As the officers approached, they saw a wooden bat at the driver's feet and noticed the passenger making furtive hand motions. *Thierry*, 60 Wn. App. at 447. After ordering the

two to bring their hands into view, an officer saw a pistol between the front armrests. *Thierry*, 60 Wn. App. at 447.

This court upheld the stop, stating that the officers had observed behavior consistent with the profile of drive-by shootings and were not required to ignore their observations. *Thierry*, 60 Wn. App. at 448. We explained that officers may bring their experience to bear on a situation, and it is necessary only that the circumstances at the time of the stop be more consistent with criminal than innocent conduct. *Thierry*, 60 Wn. App. at 448. Given the high crime nature of the area in question and the drive-by shooting profile, the facts that existed immediately before the stop did not comport with innocent activity. *Thierry*, 60 Wn. App. at 448-49.

The trial court cited *Thierry* in upholding Officer Tracy's stop of the car in which You was riding. Although You argues that the facts are distinguishable, we are persuaded that reliance on the officer's experience controls here. Officer Tracy investigates gang-related crimes and was in a high-crime area with frequent incidents of gang activity and violence. Officer Tracy was responding to a late night report of a drive-by shooting when he saw a car with its high beams on. The car drove in circles around the area. Tracy knew that the blue sedan did not match the description of the car he had received, but he thought that a mistaken description was possible. He also knew that drive-by shootings often involve multiple vehicles, including look-out and/or retaliatory vehicles. Although being in a high-crime area at night does not justify a stop when a crime has not been committed, here a drive-by shooting had been committed. Viewed through the lens of the officer's training and experience, the circumstances at the time of the stop were more consistent with criminal than innocent conduct, and the trial court did not err in upholding the investigatory stop and in denying You's motion to suppress.

## B. CONSTRUCTIVE POSSESSION

You next argues that the evidence was insufficient to prove that he constructively possessed the firearm found at his feet. We disagree.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Possession may be actual or constructive. *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010), *review denied*, 170 Wn.2d 1029 (2011). Constructive possession is established by showing that the defendant had dominion and control over the firearm. *State v. Murphy*, 98 Wn. App. 42, 46, 988 P.2d 1018 (1999), *review denied*, 140 Wn.2d 1018 (2000). The defendant's control over the firearm does not have to be exclusive, but mere proximity to the firearm is insufficient to show control. *Raleigh*, 157 Wn. App. at 737. The ability to reduce an object to actual possession is an aspect of dominion and control, but other aspects such as physical proximity should be considered as well. *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989). The court must look at the totality of the circumstances to determine whether the jury could reasonably infer dominion and control. *State v. Potts*, 93 Wn. App. 82, 88, 969 P.2d 494 (1998).

You argues that the evidence showed only his proximity to the firearm, and thus, there was insufficient evidence to show that he constructively possessed the weapon. As support, he

cites *State v. Cote*, 123 Wn. App. 546, 550, 96 P.3d 410 (2004), where officers found a Mason jar containing contraband in the car in which the defendant had been riding. Although the jar contained the defendant's fingerprint, it was found in the back of the vehicle and not in the passenger area. Evidence that the defendant was in proximity to and at one point touched the contraband was insufficient to establish the dominion and control needed to prove constructive possession. *Cote*, 123 Wn. App. at 550.

You also cites *State v. George*, 146 Wn. App. 906, 922-23, 193 P.3d 693 (2008), where evidence that a marijuana pipe was found on the rear passenger floorboard of a vehicle, next to where the defendant had been sitting, was insufficient to prove dominion and control. You relies further on a more recent decision from this court holding that evidence was insufficient to prove constructive possession where a firearm was found behind the backseat of a vehicle, next to where the defendant had been sitting. *State v. Chouinard*, 169 Wn. App. 895, 902-03, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013); *but see State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997) (evidence sufficient to prove constructive possession where officer saw gun sticking out from under defendant's seat; ability to reduce object to actual possession is aspect of dominion and control).

You asserts that the evidence of constructive possession in this case is even weaker than that in *Cote*, *George*, and *Chouinard*. We disagree.

Here, as in *Echeverria*, the officer saw a firearm sticking out from between You's feet when he approached the passenger side of the car. There was ammunition in the center console beside You that matched the ammunition in the gun. Tracy found a different type of gun underneath the rear passenger seat, and ammunition matching that gun was in the rear

8

passenger's jacket. Viewing the circumstances as a whole, they show that You had the ability to reduce the firearm at his feet to actual possession and that he had dominion and control over that firearm.

## C.   CONTINUANCE FOR SAME CRIMINAL CONDUCT DETERMINATION

Finally, You argues that the trial court abused its discretion by refusing to continue the sentencing hearing based on the understanding that no same criminal conduct analysis was appropriate.

The grant or denial of a continuance is within the trial court's discretion and will not be disturbed absent a showing that the court abused its discretion and the defendant was prejudiced thereby. *State v. Herzog*, 69 Wn. App. 521, 524, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993).   However, where a defendant has requested a sentencing alternative authorized by statute, the categorical refusal to consider that alternative is a failure to exercise discretion and is subject to reversal. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).   Further, remand for resentencing is often necessary where a sentence is based on a trial court's erroneous belief about the governing law. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).

At issue here is the trial court's refusal to continue sentencing to address the issue of whether some of You's prior offenses constituted the same criminal conduct.  Under the same criminal conduct rule, multiple offenses count as one in calculating the defendant's offender score if they were committed at the same time and place against the same victim and require the same criminal intent.  RCW 9.94A.589(1)(a).

A current sentencing court must calculate an offender score based on an offender's "other current and prior convictions."  RCW 9.94A.589(1)(a); *State v. Williams*, 176 Wn. App. 138,

141, 307 P.3d 819 (2013). If a prior sentencing court found multiple offenses that encompassed the same criminal conduct, the current sentencing court must count those prior convictions as one offense. RCW 9.94A.525(5)(a)(i); *Williams*, 176 Wn. App. at 141. If the prior sentencing court did not make this finding, but nonetheless ordered the offender to serve the sentences concurrently, the current sentencing court must independently evaluate whether those prior convictions encompass the same criminal conduct and, if they do, must count them as one offense. RCW 9.94A.525(5)(a)(i); *see also State v. Torngren*, 147 Wn. App. 556, 563, 196 P.3d 742 (2008) (sentencing court must apply same criminal conduct test to multiple prior convictions that a court has not already concluded amount to the same criminal conduct), *abrogated on other grounds by State v. Graciano*, 176 Wn.2d 531, 295 P.3d 219 (2013). The defendant bears the burden of proving that his prior offenses constitute the same criminal conduct. *Graciano*, 176 Wn.2d at 539.

You's criminal history includes 12 juvenile and adult offenses committed on three different dates. You refused to sign a stipulation that counted these offenses separately, and after the verdict he requested a month's continuance so that he could obtain documentation that would enable him to make the same criminal conduct argument. You's attorney objected to the court's decision to set sentencing only 10 days later, and he again requested a continuance at sentencing so that he could obtain the documents needed to make the same criminal conduct analysis. The trial court declined to grant the continuance, explaining that a same criminal conduct evaluation was not then appropriate and was instead a matter for appellate review.

While acknowledging the holding in *Torngren* set forth above, the State seems to assert that You has waived this claim of error by being unprepared to make a same criminal conduct

argument at sentencing and by failing to raise a related claim of ineffective assistance of counsel on direct appeal. The State asserts further that because You has failed to show that his prior offenses constituted the same criminal conduct, he can show no prejudice from the court's refusal to continue sentencing.

These arguments are not persuasive. Defense counsel was unprepared to make the same criminal conduct argument at sentencing because he did not have the documents he requested from the State that he needed to make the argument. Without those documents, You is prevented from making the same argument on appeal. The trial court abused its discretion by declining to continue sentencing so that the defense could prepare for the mandatory same criminal conduct evaluation of You's prior offenses. The trial court's reason for not granting the continuance was based on an erroneous belief of the governing law.

Accordingly, we affirm You's conviction, but remand so the parties and the court may engage in the same criminal conduct evaluation of You's prior offenses before resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Penoyar, P.J.

Maxa, J.