# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47123-0-II |
| Respondent, | |
| v. | |
| BRIAN KEITH HARPER, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Brian Keith Harper appeals his conviction of unlawful possession of a firearm in the first degree. He argues that the trial court erred in denying his motion to suppress and failing to take into account Harper's ability to pay when imposing discretionary legal financial obligations (LFOs). We affirm.

FACTS

I.      OVERVIEW[1]

On May 30, 2014, numerous witnesses reported a drive-by shooting in the area of 54th Street and South Oakes Street in Tacoma. Witnesses reported the suspect vehicle to be either a white Ford Crown Victoria or a white Chevrolet Caprice with two black male occupants "which fled after firing approximately 6 shots at two women walking with a stroller." Clerk's Papers (CP) at 35. Police dispatch did not broadcast a license plate number to the officers reporting to the scene. Officers Christopher Yglesias and Joshua White "drove to the area of 48th and Pine[,] . . . were updated that the vehicle was last seen traveling east toward Tacoma Mall Blvd," and they

---

[1] Most of these facts were derived from a hearing held pursuant to CrR 3.5.

drove to the intersection of 48th Street and Tacoma Mall Boulevard. CP at 35. White observed a vehicle approaching them driving north bound on Tacoma Mall Boulevard. It matched both the description of the suspect vehicle, a 1999 white Ford Crown Victoria, and the report that two black males occupied it. The officers pulled the vehicle over in a parking lot and conducted a high-risk, felony stop of the vehicle. The parking lot was approximately 11 blocks north and six blocks east from where the shooting occurred. The officers did not observe any criminal violations or traffic infractions before pulling the vehicle over.

Officers Stephen O'Keefe and Mikael Johnson arrived on the scene as the occupants were being called out of the vehicle at gunpoint. O'Keefe took custody of Harper after he exited the car from the passenger seat. The officers observed a firearm in plain view on the floorboard of the front passenger seat. O'Keefe read Harper his *Miranda*[2] rights while placing him under arrest. Harper understood them and waived them. Harper admitted he owned the firearm, it had not been fired, and he kept it for his own safety.

The State charged Harper with unlawful possession of a firearm in the first degree.[3]

II.    PROCEDURAL HISTORY

On September 19, 2014, Harper filed a motion to suppress evidence pursuant to CrR 3.6. The State's response included the involved officers' reports of the incident and the Computer Aided Dispatch (CAD) report.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] RCW 9.41.040(1)(a).

On October 2, 2014, the trial court heard arguments on the motion to suppress. In deciding the motion, the trial court relied on the police reports and the testimony from the CrR 3.5 hearing which we have described above. Harper argued that the officers did not have a reasonable articulable suspicion to believe he was involved in criminal activity and that there were also reports of other possible vehicles.

The trial court denied the motion to suppress and concluded the officers had a reasonable articulable suspicion to conduct an investigative *Terry*[4] stop. The trial court entered written findings of fact and conclusions of law on the admissibility of evidence under CrR 3.5 and 3.6. The trial court's findings of fact stated in relevant part:

> 1. Tacoma Police Officers responded to the area of South 54th and South Oakes to investigate a drive-by shooting/assault. Officers were informed by dispatch that the suspect vehicle was an older white sedan, possibly a Ford Crown Victoria. Dispatch also advised that the suspect vehicle's occupants consisted of two black men, whom had been involved in the drive-by.
>
> 2. Dispatch advised officers that the suspect vehicle had been seen six blocks away—traveling east toward on Tacoma Mall Blvd. They drove to that area and observed a vehicle matching the suspect vehicle's description approaching northbound on Tacoma Mall Blvd. Two black males were inside the vehicle.

CP at 133. The trial court made the following conclusion of law:

> 1. Based on the testimony presented during the 3.6 hearing, Tacoma Police Officers involved in this case conducted a permissible *Terry* stop of Harper while investigating a drive-by shooting/assault incident because he was riding in a vehicle that had been described as being involved in the drive-by; the vehicle, within minutes, was located about a mile from the scene of the shooting; and he fit the description of suspect described by 911 callers.

CP at 135.

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

### III.    TRIAL AND SENTENCING

The matter proceeded to trial and on October 6, 2014, the jury found Harper guilty of unlawful possession of a firearm in the first degree.

On January 9, 2015, the trial court sentenced Harper to 31 months of confinement. The trial court ordered Harper to pay $2,000 in LFOs. The mandatory LFOs included: a $500 crime victim assessment, a $100 DNA database fee, and a $200 criminal filing fee. The discretionary LFOs included $1,200 in court-appointed attorney fees and defense costs. The trial court did not specifically inquire as to Harper's ability to pay LFOs. Harper did not object to the lack of inquiry or to the imposition of the LFOs. Harper appeals.

### ANALYSIS

### I.    MOTION TO SUPPRESS

Harper argues that the trial court erred in denying his motion to suppress because the State failed to present sufficient facts to establish that the officers had a reasonable articulable suspicion of criminal behavior to justify the stop. We disagree.

#### A.    Standard of Review

We review a trial court's denial of a motion to suppress by considering whether the trial court's findings of fact support its conclusions of law. *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). Any unchallenged findings of fact are considered to be verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 562, 299 P.3d 663 (2013). Because Harper does not assign error to the trial court's findings of fact, they are verities on appeal and we determine whether they support the court's conclusions of law. *Ross*, 106 Wn. App. at 880. We review conclusions of law de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014).

B.      The Trial Court Did Not Err in Denying the Motion to Suppress

"Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a warrant supported by probable cause." *State v. Z.U.E.*, 178 Wn. App. 769, 779, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015). "'As a general rule, warrantless searches and seizures are per se unreasonable.'" *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). However, the rule is subject to exceptions. *Z.U.E.*, 178 Wn. App. at 779. One exception is the investigative stop, commonly referred to as a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). "The burden is always on the [S]tate to prove one of these narrow exceptions." *Ladson*, 138 Wn.2d at 350.

A *Terry* stop is justified when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. When considering the reasonableness of a stop, the court must evaluate it based on a totality of the circumstances. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). "An important factor comprising the totality of circumstances which must be examined is the nature of the suspected crime." *State v. Randall*, 73 Wn. App. 225, 229, 868 P.2d 207 (1994). An investigatory stop can be justified on the basis of information supplied to the police by another person. *State v. Lesnick*, 84 Wn.2d 940, 943, 530 P.2d 243 (1975) (citing *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)). "An officer may make a *Terry* stop based upon a reasonable suspicion that the detainee is engaged in criminal activity, which is less than what is required to find probable cause." *Randall*, 73 Wn. App. at 228.

Reasonable suspicion is dependent upon the reliability and content of the information possessed by the police considered in the totality of circumstances. *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). Our Supreme Court has held that reliability "can be established if (1) the informant was reliable or (2) the officer's corroborative observation suggests either the presence of criminal activity or that the information was obtained in a reliable fashion." *Z.U.E.*, 178 Wn. App. at 781. However, when an officer is "acting on a tip involving the threat of violence and rapidly developing events," the officer "does not have the opportunity to undertake a methodical, measured inquiry into whether the tip is reliable." *Randall*, 73 Wn. App. at 230. Rather, in the midst of investigating a violent crime, the officer "must make a swift decision based upon a quick evaluation of the information available" at that instant. *Randall*, 73 Wn. App. at 230. Under these circumstances, the officer "should be able to rely on the reliability of information disseminated by police dispatch and, when his or her observations corroborate the information and create a reasonable suspicion of criminal activity, to make an investigatory stop." *Randall*, 73 Wn. App. at 230.

In *State v. Moreno*, 173 Wn. App. 479, 493, 294 P.3d 812 (2013), the officers responded to a crime in progress. Multiple reports of gunfire were reported one block away moments before an officer stopped the defendant. *Moreno*, 173 Wn. App. at 493. The officer who made the investigatory stop had considerable experience with gangs in the area and saw the defendant in a rival gang's colors, in a car "hurriedly leaving" an alley. *Moreno*, 173 Wn. App. at 493. Under the totality of the circumstances, the officer reasonably believed the car was involved in the crime

being investigated. *Moreno*, 173 Wn. App. at 493. Although Harper tries to distinguish his case from *Moreno*, his case is actually similar. In both cases the officers were responding to violent crimes that just occurred, and the vehicles were seen and stopped shortly after the reported shooting.

Similarly, in *State v. Thierry*, 60 Wn. App. 445, 803 P.2d 844 (1991), officers observed the defendant and a passenger driving in a manner consistent with committing drive-by shootings. They were driving slowly in a high crime area. The windows were down even though it was forty degree weather. And, they were slouched down in their seats. The defendant also made furtive hand motions as the officers approached the car. We upheld the stop because a reasonable articulable suspicion existed. *Thierry*, 60 Wn. App. at 446-48. The "[c]ircumstances that might appear innocuous to the average person may appear incriminating to a police officer in light of past experience, and the officer may bring that experience to bear on a situation, as the officers did here." *Thierry*, 60 Wn. App. at 448.

Harper argues that his case is distinguishable from *Moreno* and *Thierry* because he did not make furtive movements, and the officers did not stop the vehicle "because of any facts specifically related to the occupants' behavior, but only because they were driving a similar car in the direction that the drive-by shooting suspects could have also driven." Br. of Appellant at 12. However, here, multiple reliable witnesses reported that the vehicle was heading the direction the officers witnessed, the vehicle matched the suspect vehicle description, and Harper and the driver matched the suspects' description. These circumstances might appear innocuous to the average person but incriminating to a police officer under the circumstances of people fleeing from a reported crime in progress. Harper has failed to effectively distinguish his case from *Moreno* or *Thierry*.

Harper cites to *State v. Doughty*, 170 Wn.2d 57, 63, 239 P.3d 573 (2010), for support where our Supreme Court determined the facts did not rise to the level of a reasonable articulable suspicion. In *Doughty*, the court determined that the totality of the circumstances did not present facts that established a reasonable articulable suspicion because there was no informant's tip and the officer did not observe furtive movements by the defendant. 170 Wn.2d at 64. The officer only saw the defendant approach and leave a suspect drug house at 3:20 A.M. *Doughty*, 170 Wn.2d at 64. However, Harper does not argue how his case is similar to the circumstances in *Doughty*. Unlike *Doughty*, there were many witness tips in this case, and the car and occupants matched the descriptions provided by witnesses.

Therefore, the trial court's findings of fact supported its conclusion of law because there is support for the trial court's conclusion that the officers had a reasonable articulable suspicion that the white Crown Victoria in which Harper was a passenger was involved in the drive-by shooting, making the *Terry* stop lawful.

We hold that the trial court did not err in denying Harper's motion to suppress because the trial court's findings supported its conclusion of law that under the totality of the circumstances the officers had a reasonable articulable suspicion to conduct an investigatory stop and contact Harper.

II.    LEGAL FINANCIAL OBLIGATIONS

Harper argues that the trial court erred by not conducting a particularized inquiry before imposing LFOs. Harper did not object during the trial and therefore, we will not consider the issue.

"Unpreserved LFO errors do not command review as a matter of right." *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015). We may use our discretion to review unpreserved claims of error. *Blazina*, 182 Wn.2d at 830. Harper argues that the court imposed LFOs on him without taking into account his financial resources or ability to pay the LFOs. However, he did not challenge the imposition of LFOs at sentencing. Therefore, we exercise our discretion to not consider the issue.[5]

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.

---

[5] In exercising this discretion, we consider the total amount of the LFOs, the length of the sentence, and the fact Harper is a licensed barber who was employed full-time prior to his arrest.